---

### YEAMANS et al. v. TANNEHILL.

#### (*City Court of New York, General Term.* October. 22, 1891.)

CONTRACTS—BREACH—ACTION—MODIFICATION.

    Plaintiffs made a contract with defendant under which he was to write for them a comedy drama, to be paid for in specified installments, and they agreed to stage and produce the play for a period of 10 weeks, beginning September 15th. Thereafter defendant delivered to plaintiffs a memorandum, acknowledging receipt of the first installment of the consideration, and guarantying to have the play completed by September 15th. The play was not completed until September 30th, when plaintiffs refused to accept it, as being too late, and sued to recover the money already paid for it. *Held* that, on the question of breach of contract, it was immaterial whether or not the memorandum promising to complete the play by September 15th was valid, as a modification of the original contract, for by that contract the play was to be produced on that date, and must have been written before that.

Appeal from trial term.

Action by Annie Yeamans and Jennie Yeamans against Frank A. Tannehill. From a judgment entered on a verdict in favor of plaintiffs, defendant appeals.

Argued before EHRLICH, C. J., and VAN WYCK and NEWBURGHER, JJ.

*Wm. B. Ellison*, for appellant. *August G. Beyer*, for respondents.

VAN WYCK, J. The plaintiffs, Mrs. Annie Yeamans, and her daughter, Jennie, actresses, entered into a written contract on May 16, 1889, with the defendant, a dramatic author, by the terms of which he was to write a three-act comedy drama, as required and directed by the plaintiffs, who were to pay him $5,000 therefor, as follows: $250 down, $100 when the first act was completed, $100 on completion of the second act, $50 when the play was finally completed, and thereafter $50 per week until the balance was fully paid; and they further agreed to stage and produce the play with a first-class company, for a season of 10 weeks, commencing September 15, 1889; the selection of the company, however, to be subject to the approval and under the direction of the defendant. The defendant signed and delivered to plaintiffs, on June 15th following, a written memorandum, by which he acknowledged receipt of $250, and guarantied to have the play completed by September 15th. It was conceded that this $250 had already been paid him by plaintiffs on the delivery of the original contract of May 16th. The plaintiffs' evidence showed that the defendant completed the first act of the play on June 13th, when he was paid $100, as agreed; that the greater part of the second act was completed and read to them on August 4th, and the other $100 was then paid; that the third and last act was not completed until September 30th, when he wrote a letter offering to read the play in full to them, which offer they refused, claiming that it came too late, as the play should have been completely finished and read to them certainly by September 15th. The plaintiffs' action

is for a return of the $450 so paid as aforesaid. The defendant's evidence went to show a waiver and modification as to the time for the completion of the play, an abandonment of the original enterprise by plaintiffs, and a failure to stage and produce the play for a 10-weeks season, commencing September 15th; but all of these contentions of defendant were disregarded by the jury, who rendered a verdict of $450 in favor of plaintiffs, and thus all disputed questions of fact were properly disposed of by the jury. But both counsel displayed much learning and ingenuity at the trial, and still more on the hearing of this appeal, as to whether or not the written memorandum of June 15th was a new contract, or a modification of the written agreement of May 16th; and whether or not it was supported by a valuable consideration; and whether such memorandum, not being under seal, could be deemed a valid modification of the original agreement, which was under seal. It must be remembered that all that this memorandum contained was a guaranty by defendant that he would finish the writing of the play by September 15th. All of this close and fine reasoning of counsel was directed to the solution of the question whether or not the defendant was legally bound to complete the play by September 15th, when, as a matter of fact, it was conceded that he had not completed the play until September 30th, nor had plaintiffs refused to accept it until that day. What matters it whether the memorandum of June 15th was or was not under seal, or whether it was a new contract, or a modification of the old, or whether it was founded on consideration or not, or whether it existed at all or not? for the defendant had agreed by the original contract of May 16th to write the play, which by the very terms of that contract the plaintiffs had agreed to stage and produce for a 10-weeks season, commencing September 15th; and how were they to stage and produce the play on that day, unless the defendant was bound to have it completed by that time? and, moreover, it would have had to have been rehearsed before it could have been properly produced, and it is in evidence that these rehearsals would have occupied two weeks' time. How could the plaintiffs produce a play on September 15th which was not completely written until September 30th? This is very aptly answered by Mrs. Yeamans, in her reply to an inquiry as to why steps had not been taken for staging the play, that "you cannot stage a play if you haven't it." The original contract required the plaintiff to produce the play by September 15th; and, although it contains no express provision limiting the time within which the defendant must complete the writing of the play, still it must be construed, in law, which is common sense, as meaning that he agreed to so finish and complete it in ample time to have it properly rehearsed before its production and presentation to the public.

So much for defendant's contention that he was not required by the terms of the original contract to complete the play by September 15th, the very day upon which this same contract required the plaintiffs to so produce and present it. And, as for this so much talked of memorandum, if it had any force, —and why not?—it inured to the benefit of the defendant, and not of plaintiffs, for it extended the time within which he was required to write the play about two weeks, the period necessary for rehearsing the play; and, if it has no force, then, under the original contract, he would be required to complete and deliver the play about two weeks previous to September 15th, the time when plaintiffs originally agreed to produce it. All of the substantial objections of defendant's counsel were directed at the supposed invalidity of this memorandum, and have thus been disposed of; and the only remaining objections to be considered are that the verdict is excessive, contrary to the evidence, contrary to law, and against the weight of evidence. After careful examination, the conclusion is reached that the evidence justifies the verdict.

Judgment affirmed, with costs. All concur.